FILED

UNITED STATES DISTRICT COURT 2016 OCT 12  PM 3: 10
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

CAPRIOLA CORP., a Florida Corporation,
and LASER PEGS VENTURES, LLC,
a Florida Limited Liability Company,

Case No. 8:16cv2893-T-17TGW

     Plaintiffs,

v.

NTOYS LIMITED, a Hong Kong Limited Company,

     Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

CAPRIOLA CORP. ("Capriola") and LASER PEGS VENTURES, LLC ("LPV") (collectively "Plaintiffs") hereby file this Complaint sounding in willful patent infringement, trade dress infringement, as well as unfair competition against NTOYS LIMITED ("Defendant" or "NToys") and allege as follows:

### PARTIES

1.     Capriola is a Florida corporation headquartered at 8304 Consumer Court, Sarasota, Florida 34240. Capriola creates, distributes, markets, promotes, and sells distinctive, proprietary and patented educational toys, including but not limited to **LASER PEGS®** illuminated construction sets protected by United States Patent 8.864,546 ("the '546 Patent"). Capriola markets these construction sets under the slogan **LIGHT IT UP®** which is protected through United States Trademark Registration No. 4,299,368 (the "**LIGHT IT UP** Mark").

2.     LPV is a Florida limited liability company also located at 8304 Consumer Court, Sarasota, Florida 34240. LPV is the exclusive licensee of the '546 Patent and helps market and distribute **LASER PEGS®** branded illuminated construction sets, including those marketed

under the **LIGHT IT UP** Mark. This includes, but is not limited to, LPV's **ZIPPY DO®** line of power blocks within Plaintiffs' various **LASER PEGS®** branded illuminated construction sets.

3.      NToys is a Hong Kong limited company located at Unit 01, 5/F, Tower A, New Mandarin Plaza, 14 Science Museum Road, Tsim Sha TSui East, Kowloon, Hong Kong.

4.      NToys makes **N-BLOX** construction toys including the line of **SHINING GALAXY** illuminated construction sets (herein the "Infringing Products"). As addressed below, the **SHINING GALAXY** illuminated construction sets are direct knock offs of **LASER PEGS®** branded illuminated construction sets marketed under the **LIGHT IT UP** Mark.

5.      According to its comprehensive website located at www.NToys.cn (the "NToys Website"), NToys makes and later imports into the United States its various lines of construction toys to United States retailers including Disney, Wal-Mart, and Toys-R-Us for sale to United States consumers. As referenced in the "About Us" Section of the NToys Website, NToys confirms that its focus is on "overseas" customers including the United States Market:

Ntoys is providing a wide variety of toys to overseas customers by keeping a close relationship with thousands of manufactures. We have a big showroom which displaying more than 100,000 latest items such as R/C car, B/O toys, Plastic toys, wooden toys, doll and any other kinds of toys. In addition, we have an effective and large website which represent over 600,000items for customer online purchasing, customers can get all the latest items daily.

*See* http://www.ntoys.cn/en/aboutEn.html (last viewed October 11, 2016).

6.      NToys not only markets its toys through the NToys Website to United States based clients, that website includes e-mail contacts at Grace@NToys.com as well as Sales@NToys.com for purposes of engaging in United States distribution and/or sales of its implicated construction toys, including but not limited to the Infringing Products.

## JURISDICTION AND VENUE

7.      This Court has Federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338(a) and (b), by virtue of 15 U.S.C. §1051 *et seq.,* in that the case arises out of §43(a) of the Lanham Act for trademark infringement and supplemental jurisdiction under

2

28 U.S.C. §§1367(a) and 1338 (a)(b).   This action further arises under the patent laws of the United States, Title 35 of the United States Code.

8.      Venue is proper under 28 U.S.C. §1391(b) because, on information and belief, NToys has offered to sell the Infringing Products (sold under the name **SHINING GALAXY**) to United States based toy distributors.   Upon further information and belief, NToys has also offered to sell Infringing Products throughout this Judicial District.  In addition, NToys routinely sells its toys at Disney, Wal-Mart, and Toys-R-Us retailers including those in the Tampa area.

## GENERAL ALLEGATIONS

### LASER PEGS® Illuminating Building Blocks

9.      **LASER PEGS®** stems from the creative mind of Jon Capriola ("Mr. Capriola"), the founder of Capriola Corp., and an innovator of educational toys.   By early 2007, Mr. Capriola wanted to develop a toy that would be enjoyed by both young boys and girls.  The task before Mr. Capriola was to develop something new, different and unique; but more importantly, something that would help children understand three-dimensional objects.   Moreover, Mr. Capriola wanted to create a toy that would foster imagination, advance learning, and help in the fundamentals of geometry and science.

10.     Based upon the aforementioned goals, Mr. Capriola developed the idea of creating a three-dimensional illuminated building block set, where each building block would include a non-opaque body sufficient to emanate light.

11.     By May 2007, Mr. Capriola named his three-dimensional construction set design, along with all the permutations capable through his non-opaque building blocks, **LASER PEGS.**

3

12.     Plaintiffs' design posed a significant advance in the field of illuminated building block sets.

13.     On August 15, 2007, Mr. Capriola (through patent counsel) prepared and filed a utility patent application regarding his illuminated building block design before the United States Patent and Trademark Office ("USPTO").   The USPTO issued a filing receipt identifying Mr. Capriola's patent application as Application Serial No. 11/839,444 (hereinafter "the '444 Application").   Mr. Capriola assigned any and all rights regarding his invention to his business Capriola Corp., including all rights to the '444 Application.

### National Awards and Recognitions regarding LASER PEGS®

14.     Starting in approximately May 2007, Capriola began selling and offering for sale its **LASER PEGS®** line of illuminated construction sets to the public.   At the onset, this included on-line sales through the website www.LaserPegs.com, as well as offerings by independent toy stores throughout the country.

15.     **LASER PEGS®** quickly became sought after as a breakthrough toy.   By 2008 and 2009, increased national interest in these illuminated construction sets led to the product being offered at larger specialty retailers such as The Sharper Image as well as Hammacher Schlemmer. In addition, independent toy stores likewise continued to flock to the product.

16.     In both 2010 and 2011, **LASER PEGS®** received numerous awards, and was featured on multiple national broadcasts as a "must have" educational toy.   This included the DR. TOY "Top 10" Toy Award, as well as the honor of receiving Toy of the Year.   In addition, the product was featured on NBC's TODAY show, as well as several other television features. This gave rise to growing interest and notoriety in the product.

4

**Domestic and International Patent / Trademark Protection**

17. **LASER PEGS®** is the subject of a domestic patent, multiple pending patent applications, numerous trademark registrations and additional pending trademark applications.

18. Capriola is the owner of the following trademark registrations granted by the USPTO regarding **LASER PEGS®** toys all of which are in International Class 28, including but not limited to the **LITE IT UP** Mark:

| Registered Mark | Registration No. | Registration Date | Identification of Goods and Services |
|---|---|---|---|
| **LASER PEGS** | 3,770,530 | April 6, 2010 | Educational toy for constructing tractors, dune buggies, bugs and any other shape or form with an electric supply and a plurality of translucent blocks which light up when attached to the electric supply. |
| **3D LITE BOARD** | 4,064,947 | November 29, 2011 | Educational toy for constructing tractors, dune buggies, bugs and other shapes featuring translucent blocks which light up when plugged into an electrical outlet. |
| **THE ULTIMATE TOY FOR KIDS** | 4,068,811 | December 6, 2011 | Educational toy construction sets for constructing tractors, dune buggies and insects featuring translucent blocks which light up when plugged into an electrical outlet. |
| **WORLD OF BUGS** | 4,140,248 | May 8, 2012 | Educational toys for teaching fine motor skills via construction of illuminated blocks which resemble bugs. |
| **THE ULTIMATE CONSTRUCTION TOY FOR KIDS** | 4,654,473 | December 9, 2014 | Toy construction sets featuring translucent blocks which light up when plugged into an electric power supply. |
| **LIGHT IT UP** | 4,299,368 | March 5, 2013 | Educational toy for constructing tractors, dune buggies, bugs and other shapes or form with an electric supply and a plurality of translucent blocks which light up when attached to the electric supply. |

19. On April 21, 2015, Judge Virginia M. Hernandez-Covington in this Judicial District in Case No. 8:14-CV-03122-VMC-TBM entitled *Capriola Corp. v. Hampton Direct, Inc.* found that the **LIGHT IT UP** Mark was "strong, distinctive and ha[d] acquired secondary meaning in the marketplace."

20.     In addition to these numerous registered and pending trademarks, Capriola is also the owner of multiple pending patent applications as well as the '546 Patent which is a continuation-in-part of the '444 Application.     The '546 Patent, entitled "Illuminated Toy Building System and Methods" was issued by the United States Patent & Trademark Office ("USPTO") on October 21, 2014.

21.     The '546 Patent remains valid and enforceable.

<u>**LASER PEGS®'s Distinctive Trade Dress**</u>

22.     In addition to the multiple trademarks and the patent issued by the USPTO regarding the **LASER PEGS®** illuminated building block sets, the underlying distinctive and unique shapes of its non-opaque blocks are likewise protected by considerable trade dress rights. Put another way, the four consecutive years of sales by Plaintiffs' of **LASER PEGS®,** in combination with the multiple aforementioned national toy awards received by Plaintiffs', have created considerable source identifying recognition in Plaintiffs' illuminating building blocks.

23.     Consumers over the past nine years have come to recognize the **LASER PEGS®** blocks, depicted below, as originating from Plaintiffs.   Since September 2013, this has included the **ZIPPY DO®** line of power blocks:

 

**The LASER PEGS® power block for the ZIPPY DO® construction series.**

24.     As shown, the exterior shape of each of these building blocks is distinctive and not functional.

25.    Since September 2013, the power block for the **ZIPPY DO®** construction series has created considerable good will and notoriety for Plaintiffs.    This includes considerable recognition within the toy industry.

26.    These product designs have acquired distinctiveness such that the ornamental and non-functional design is attributed solely with Plaintiffs.

**NToy's Copy-Cat Design for its N-BLOX line of SHINING GALAXY Construction Toys**

27.    In early 2016, representatives of LPV attending the HKTDC Hong Kong Toys & Games Fair discovered a booth featuring copy-cat designs of its **ZIPPY DO** line of products:



28.    As shown, the **SHINING GALAXY** Construction Toys have about six lines including a tractor, a dragster, a tractor, and an aircraft (amongst others).    This was particularly disturbing to Plaintiffs, since the displayed Infringing Products were virtually identical to the **ZIPPY DO** line of construction sets as exemplified by the following side-by-sides:

 

| ZIPPY DO® Tractor by LASER PEGS® | NToys' SHINING GALAXY Tractor |

 

| ZIPPY DO® Aircraft by LASER PEGS® | NToys' SHINING GALAXY Aircraft |

 

| ZIPPY DO® Dragster by LASER PEGS® | NToys' SHINING GALAXY Dragster |

29.    After contacting trade show representatives and confirming their rights in the '546 Patent, the **LITE IT UP** Mark, as well as the distinctive power block for the **ZIPPY DO** line of construction sets, LPV was successful in having trade show personnel remove Defendant's Infringing Products from the tradeshow:



30.    After the HKTDC Hong Kong Toys & Games Fair, Plaintiffs believed that NToys would discontinue selling these copy-cat Infringing Products.

<u>**Mid-June 2016 Receipt of Quotation Sheet & Sample for U.S. Sales**</u>

31.    In mid-June 2016, Plaintiffs received notice from one if its distributors that NToys was offering approximately twenty (20) lines of the Infringing Products for sale both in the United States (as well as in Europe).   Attached as **Exhibit A** is a true and correct copy of their Quote Sheet.   As shown in **Exhibit A**, the prices were in United States Dollars, and in addition there were specific delivery terms, payment terms, and deposit information.

32.     In July 2016, Plaintiffs received a sample of the Infringing Products.  Based upon a side-by-side comparison, it appeared that the Infringing Products had the same size, dimensions, configuration and internal components as the **ZIPPY DO** power base:




**ZIPPY DO Power Base Block**          **SHINING GALAXY Power Base Block**

33.     Moreover, Plaintiffs review of the **SHINING GALAXY** Power Base Block demonstrates how the Infringing Products meet all of the limitation of at Claim 1 of the '546 Patent.   A true and correct copy of the infringement chart establishing this infringement is provided as **Exhibit B** hereto.

34.     As confirmed in **Exhibit B**, Defendants infringe at least Claim 1 of the '546 Patent.

35.     In addition, the shapes, configurations and appearances of **SHINING GALAXY** Power Base Block are so confusingly similar to the look and feel of Plaintiffs' (nonfunctional) trade dress for its **ZIPPY DO** Power Base Block as to create a significant danger of consumer confusion.

36.     Based upon review of the trade dress of both the construction sets, it is apparent that the **SHINING GALAXY** Power Base Block was designed and dimensioned so as to connect, engage, and attach with **LASER PEGS®** blocks.    Put another way, Defendant

10

intentionally designed their products to allow their blocks to illuminate when connected (via a male connector) to the **LASER PEGS®** blocks (and vice versa).

**Similarities in NToy's SHINING GALAXY Product Packaging**

37.     Based upon review of NToy's underlying product packaging, it is further apparent that Defendant's **SHINING GALAXY** product packaging is an imitation of Plaintiffs' **LASER PEGS®** black background product packaging.

38.     This constitutes slavish copying in that an ordinary consumer reviewing Defendant's **SHINING GALAXY** would believe those illuminated building blocks are affiliated, approved, sponsored by and/or endorsed by Plaintiffs. Furthermore, **LASER PEGS®** product packaging includes a black background with depictions of building block kits in bright colors.     In comparison, Defendant's **SHINING GALAXY** product packaging likewise uses black product packaging which mimics the look-and-feel of Plaintiffs' packaging.     This further includes use of the **LIGHT IT UP** Mark on the front of the **SHINING GALAXY** product packaging.

39.     As noted previously, Defendant's intentional efforts to create a confusingly similar copy-cat line of construction set toys has even gone down to similar building block kits.

40.     Defendant's decision to feature an: (i) aircraft toy building block set (contained in black packaging); (ii) a tractor toy building block set (again with black packaging); and (iii) Dragster building block set (also again with black packaging) was done intentionally with the goal of creating additional consumer confusion.

41.     Defendant is in clear disregard of Plaintiffs' exclusive patent rights in the '546 Patent as well as Plaintiffs' vast trade dress rights regarding the distinctive shape and configurations of these highly distinctive and source identifying illuminating building blocks.

42.    Defendant, as a second market entrant in light of **LASER PEGS®** four-year sales history for its **ZIPPY DO** line are causing (and will continue to cause) irreparable harm in the field of educational toys through sale of these three (and other) versions of the **SHINING GALAXY** construction sets.

43.    Ultimately, the sale of these inferior and copy-cat **SHINING GALAXY** illuminated building block sets ultimately risks the loss of the Plaintiffs' well established good will and reputation.

**COUNT I**
**WILLFUL INFRINGEMENT OF U.S. PATENT NO. 8,864,546**

44.    Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1–43 above.

45.    Capriola is the owner of the '546 Patent, which is exclusively licensed to LPV. A true and correct copy of the '546 Patent is attached as **Exhibit C.**

46.    Plaintiffs have the right to sue, and recover damages, for infringement of the '546 Patent.

47.    On information and belief, Defendant directly infringe - or through the doctrine of equivalence infringe - the '546 Patent in this Judicial District, and elsewhere throughout the United States.

48.    Infringements by Defendant include without limitation making, using, offering for sale, and/or selling within the United States, and/or importing into the United States, the three above mentioned **SHINING GALAXY** construction sets (*i.e.*, the Infringing Products) (which likely includes others currently unknown to Plaintiffs).

49.    By making, using, importing, offering for sale, and/or selling within the United States, and/or importing into the United States these illuminated LED building block sets, which

fall within at least one or more claims of the '546 Patent, Defendant is liable for infringement of

the '546 Patent under 35 U.S.C. § 271(a).

50.     This infringement by **SHINING GALAXY** construction sets (i.e., the Infringing

Products) includes at least Claim 1 of the '546 Patent, which reads as follows:

> A building block set having a plurality of building blocks, with at least
> some of the blocks comprising:
> a generally transparent body defining a hollow interior cavity and having
> first and second cylindrical openings thereinto;
> an internal light source within the hollow interior cavity of the transparent
> body operable into an illuminated state in response to an electrical input;
> a non-conductive barrel extending outwardly from the transparent body
> and coaxial with the first cylindrical opening;
> a male electrically conductive connector fitted at least partially into the
> non-conductive barrel and coaxial therewith;
> a female electrically conductive connector extending into the hollow
> interior cavity coaxially away from the second cylindrical opening;
> and an electrical circuit within the interior volume of the transparent body
> electrically coupled with the internal light source and both the male and female
> connectors for powering the internal light source in response to an electrical input
> into either electrically conductive connector;
> wherein the at least some of the blocks are connectable such that, with the
> male electrically conductive connector of a first one of the blocks fully inserted
> into the female electrically conductive connector of a second one of the blocks,
> the non-conductive barrel of the first one of the blocks will be at least partially
> seated within the cylindrical opening of the second one of the blocks, and the first
> one of the blocks and the second one of the blocks are freely rotatable relative to
> one another about a connection axis there between while maintaining electrical
> contact;
> and wherein, with the male electrically conductive connector of the first
> one of the blocks fully inserted into the female electrically conductive connector
> of the second one of the blocks, the female electrically conductive connector of
> the second one of the blocks will be, in a radial direction perpendicular to the
> connection axis, at least partially seated between the non-conductive barrel and
> the male electrically conductive connector of the first one of the blocks.

51.     On information and belief, Defendant's Tractor, Dragster and Aircraft as

identified in Paragraph 28 above, meet each and every element of Claim 1 of the '546 Patent and

therefore infringement, based upon their use of the following block:



52.     This infringement is willful in that Defendant is well aware of the '546 Patent. This is further confirmed in the fact that Plaintiffs had Defendant's booth take down earlier this year at the aforementioned HKTDC Hong Kong Toys & Games Fair.

53.     Plaintiffs have been irreparably harmed and damaged in light of the foregoing willful patent infringement of the '546 Patent.

54.     Defendant should be ordered to pay Plaintiffs not only their damages, costs and expenses, but also pre-judgment and post-judgment interest as provided by 35 U.S.C. § 284. Likewise, Plaintiffs request judgment and an order finding that this is an exceptional case within the meaning of U.S.C. § 285 and awarding to Plaintiffs its reasonable attorneys' fees, as well as all other relief to which Plaintiffs may show itself to be entitled.

**COUNT II**
**TRADEMARK COUNTERFEITING IN VIOLATION OF**
**SECTIONS 32 AND 34(d)(1)(B) OF THE LANHAM ACT**

55.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1–43 above.

56.     Capriola markets its construction sets under the slogan **LIGHT IT UP®** as protected by U.S. Trademark Registration No. 4,299,368 (the "**LIGHT IT UP** Mark").

57.     Capriola markets its construction set toys with a secondary slogan **THE ULTIMATE CONSTRUCTION TOY FOR KIDS®** as protected by U.S. Trademark Registration No. 4,654,473 (the "Ultimate Mark").

58.     Both the **LIGHT IT UP®** Mark and the Ultimate Mark, along with the **LASER PEGS®** mark, are the prevalent identifiers on the front of Plaintiffs' distinctive product packaging – which is a means of association with relevant consumers of Plaintiffs' highly regarded illuminated construction set toys:

  

59.     Upon review various product packaging that Defendant suggests that it is using for sales (and/or offers for sale) in the United States, they plan to use the term **THE CREATIVE CONSTRUCTION SET FOR KIDS** as well as the term **LIGHT IT UP AFTER ASSEMBLING** on the front side of their product packaging.   This is illustrated in the following two screen captures of Defendant's product packaging:



15



60.     Defendant's aforesaid use of both the **LIGHT IT UP®** Mark and the Ultimate

Mark are not for genuine **LASER PEGS®** brand illuminated construction set toys and constitute

use of spurious marks identical with, or substantially indistinguishable from, Plaintiffs which are

federally registered for use in connection with these illuminated construction set toys.

61.     Defendant's acts have caused and/or are likely to cause confusion, mistake, or

deception as to the source, origin, sponsorship, or approval of Defendant's goods.

62.     Defendant's acts constitute trademark counterfeiting of the **LIGHT IT UP®**

Mark and the Ultimate Mark in violation of Sections 32(1) and 34(d)(1)(B) of the Lanham Act,

15 U.S.C. §§ 1114(1) and 1116(d)(1)(B).

63.     Defendant's acts greatly and irreparably damage Plaintiffs and will continue to

damage Plaintiffs unless restrained by the Court; wherefore, Plaintiffs are without an adequate

remedy at law. Accordingly, Plaintiffs are entitled to, among other relief, an order permanently

enjoining and restraining Defendant from using the **LIGHT IT UP®** Mark and the Ultimate

Mark in connection with the sale of non-genuine **LASER PEGS®** brand illuminated construction set toys.

### COUNT III
### TRADE DRESS INFRINGEMENT UNDER SECTION 43(A) OF THE LANHAM ACT

64.     Plaintiffs hereby incorporate by reference the allegations set forth in Paragraphs 1–43 above.

65.     Brick-and-mortar retailers, consumers and toy vendors recognize Plaintiffs' distinctive black product packaging as a source identifier of **LASER PEGS®** brand toy sets:

 

66.     Defendant's black product packaging, as previously shown, is so confusingly similar compared to Plaintiffs' above identified trade dress so as to risk a likelihood of consumer confusion.

67.     This risk of consumer confusion is further escalated in the fact that Defendant's have created illuminated building block kits such as tractors, aircraft and dragsters – which mirror kits previously created and launched by Plaintiffs.

68.     Accordingly, Defendant's sale, offer for sale, advertising, promotion, and marketing of its **SHINING GALAXY** illuminated building block sets is likely to deceive,

confuse and mislead purchasers, and prospective purchasers, to believe that they emanate from or are authorized or approved by, or are in some manner associated or affiliated with Plaintiffs.

69.     By use of Plaintiffs' trade dress (including black product packaging), Defendant is consciously and deliberately seeking to capitalize on the goodwill and product quality associated with Plaintiffs' **LASER PEGS®** illuminated building block sets, and the Defendant intends to capitalize upon and profit from the consumer confusion created by these collective actions. As such, this is an exceptional case.

70.     Unless enjoined, Defendant's continued infringement will cause irreparable injury to Plaintiffs, such that Plaintiffs have no adequate remedy at law.

71.     Defendant's conduct as described in the previous paragraphs constitutes common law trade dress infringement actionable under the Lanham Act.

72.     Plaintiffs have been harmed by Defendant's conduct as alleged above in an amount not yet known.

### COUNT IV
### COMMON LAW UNFAIR COMPETITION

73.     Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-72 above as if fully stated herein.

74.     This is an action for unfair competition under the laws of the state of Florida.

75.     Defendant's aforesaid activities constitute unfair competition and an infringement of Plaintiffs' common law trade dress rights in the above-described trade dress and related indicia denoting the Plaintiffs as the source of goods.

76.     Plaintiffs have been damaged by the Defendant's unfair competition.

77.     This common law unfair competition has caused, and unless enjoined will continue to cause Plaintiffs irreparable harm.

78.     Plaintiffs have no adequate remedy at law.

## JURY REQUEST

Plaintiffs request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Honorable Court enter such Preliminary and Final Orders and Judgments as are necessary to grant the following relief:

(a)     a permanent injunction against the acts of patent infringement, trademark infringement, trade dress infringement and related acts of unfair competition by Defendant;

(b)     damages adequate to compensate Plaintiffs for the damage it has suffered as a result of Defendant's willful acts, including but not limited to patent infringement, trademark infringement, trade dress infringement and unfair competition by Defendants;

(c)     an order requiring Defendant to remove all online content regarding its copy-cat **SHINING GALAXY** illuminated building block sets;

(d)     an order requiring Defendant to remove from all brick-and-mortar stores any and all **SHINING GALAXY** illuminated building block sets;

(e)     an order requiring Defendant to stop use of the aforementioned trademarks including but not limited to the **LIGHT IT UP** Mark and the Ultimate Mark;

(f)     an accounting and disgorgement of profits derived by Defendant;

(g)     any and all Prejudgment interest;

(h)     reasonable attorney's fees, costs and expenses of this lawsuit;

(i)     punitive damages;

(j)     costs for purposes of corrective advertising to address Defendant's acts of trade dress infringement and the resulting confusion that has been caused in the market;

(k)    destruction of the infringing advertisements and promotional materials, including but not limited to any inventory of the Infringing Products; and

(l)    any such other and further relief as this Court deems just and proper.

DATED this 12th day of October, 2016.

> _s/ Robert H. Thornburg_
> Robert H. Thornburg
> Florida Bar No. 630829
> rthornburg@addmg.com
> ALLEN, DYER, DOPPELT,
> MILBRATH & GILCHRIST, P.A.
> 1221 Brickell Avenue, Suite 2400
> Miami, FL 33131
> Telephone:  305-374-8303
> Facsimile:  305-374-8306
>
> _Counsel to Plaintiffs Capriola Corp. and Laser Pegs Ventures LLC_